IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Bethany G., | ) |
|       Plaintiff, | ) |
| | ) Case No.: 20-cv-50483 |
|     v. | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) |
| Commissioner of Social Security,[1] | ) |
|       Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff's motion for summary judgment [13] is granted and the Commissioner's motion for summary judgment [19] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

**BACKGROUND**

    A. Procedural History

    On July 27, 2018, Plaintiff Bethany G. ("Plaintiff") filed an application for Social Security disability insurance benefits and an application for supplemental security income under Title II of the Social Security Act. R. 19. She alleged a disability beginning on April 12, 2017. *Id.* The Social Security Administration ("Commissioner") denied her applications on October 22, 2018, and upon reconsideration on February 25, 2019. R. 84, 94. Plaintiff filed a written request for a hearing on April 15, 2019. R. 107–08. On February 19, 2020, a hearing was held by Administrative Law Judge ("ALJ") Kevin Plunkett where Plaintiff appeared and testified. R. 32–73. Plaintiff was represented by counsel. *Id.* An impartial vocational expert also appeared and testified. *Id.*

    On March 20, 2020, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits and supplemental security income. R. 15–27. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1–3. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion for summary judgment [14] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [19].

    B. Medical Opinions

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

On October 12, 2018, state-agency medical consultant Marion Panepinto, M.D., provided his opinion of Plaintiff's condition after reviewing the medical record. R. 75–82. Dr. Panepinto opined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. R. 79. He further found that Plaintiff had no postural or manipulative limitations. R. 80. Incorporating the opinion of vocational expert Amber Faaze, this initial evaluation concluded that Plaintiff was limited to sedentary work. R. 80–81.

On February 22, 2019, state-agency medical consultant Calixto Aquino, M.D., provided his opinion on reconsideration of the Plaintiff's medical record. R. 84–93. Dr. Aquino opined that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. R. 90. Like Dr. Panepinto, Dr Aquino concluded that Plaintiff had no postural or manipulative limitations *Id*. Incorporating the opinion of vocational expert Shawn Garwood, this evaluation on reconsideration concluded that Plaintiff was limited to light work. R. 92.

On February 27, 2019, Plaintiff's chiropractor Chris Parrett, completed a Physician Residual Functional Capacity Question regarding Plaintiff's capacity to work. R. 694–96. Parrett stated that he regularly saw Plaintiff for chiropractic appointments between October 3, 2018 and January 7, 2019 and opined that Plaintiff could only walk approximately two city blocks during rheumatoid arthritis flare-ups, sit for 20 minutes at a time, and stand for 30 minutes at a time. R. 694. Parrett estimated that in an eight-hour workday, Plaintiff could stand or walk for about two hours, sit for about two hours, and would need to stand and walk for ten minutes every 30 minutes. R. 695. The chiropractor further opined that Plaintiff would need to take unscheduled breaks due to muscular aches, chronic fatigue, depression, and stress. *Id*. Parrett estimated that Plaintiff could never carry more than ten pounds. occasionally carry ten pounds, and frequently carry less than ten pounds. *Id*. During flare-ups of her rheumatoid arthritis, Parrett stated that Plaintiff would not be able to reach, handle, or perform fine manipulations and would need to be absent from work. R. 695–96.

On January 28, 2020, Plaintiff's treating rheumatologist David Dansdill, M.D., completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's capacity to work. R. 1022–24. Dr. Dansdill stated that he has treated Plaintiff since May 2012 and that Plaintiff suffers from rheumatoid arthritis. R. 1022. He identified swollen painful joints as an objective indication of this diagnosis and described Plaintiff's symptoms as swelling, fatigue, and pain all over her body. *Id*. He opined that Plaintiff's pain would be severe enough to interfere with Plaintiff's ability to perform simple work tasks for between a third and two-thirds of the working day. *Id*. In addition to her arthritis, Dr. Dansdill opined that Plaintiff also suffered from depression and anxiety. *Id*. Based on his experience treating Plaintiff, Dr. Dansdill concluded that she could only walk one city block, only sit for 20 minutes at a time, and only stand for 35 to 45 minutes at a time. *Id*. He stated that during an eight-hour workday Plaintiff could stand or walk for less than two hours, sit for about two hours, and would need to stand and walk for six to eight minutes every 20 to 30 minutes. R. 1023. He further opined that Plaintiff would need to take four to five unscheduled breaks a day for five to eight minutes each due to muscular aches, chronic fatigue, and painful stiff joints and that she could never carry more than ten pounds, rarely carry ten pounds or less, and only reach 10% of the time, handle objects 5% of the time, and perform fine manipulations 10%

of the time. *Id*. Finally, Dr. Dansdill opined that Plaintiff has "good days and bad days" and estimated that Plaintiff would be absent from work more than four days per month. R. 1024.

C. The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since April 12, 2017, when Plaintiff alleges her disability arose. R. 17. At step two, the ALJ found that Plaintiff suffered from the severe impairments of arthritis of the knees, hips, and shoulders without further specifying as to the form of Plaintiff's arthritis. R. 17–18. The ALJ found that these impairments more than minimally limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 19.

Before moving to step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work subject to never climbing ropes, ladders, or scaffolds; only occasionally carrying more than ten pounds, climbing ramps or stairs, stooping, kneeling, crouching, or crawling; and frequently, but not constantly, lifting less than ten pounds, operating foot controls, operating hand controls bilaterally, reaching in any directions, handling items bilaterally, or performing fine manipulations with the left hand. R. 19. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 25. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform, including document preparer, order clerk, and table worker. R. 25−26. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from April 12, 2017, to March 20, 2020, the date of the decision. R. 26.

## STANDARD OF REVIEW

The Court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)).

The Court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her

3

conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to articulate whether he found Plaintiff's rheumatoid arthritis to be a severe impairment; (2) rejecting the opinion of Dr. Dansdill, Plaintiff's treating rheumatologist; and (3) discrediting Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. As the Court finds the ALJ's error in giving little weight to Dr. Dansdill's opinion to be sufficient cause for remand, the Court will not consider Plaintiff's other arguments.

For claims filed on or after March 27, 2017, the opinions of treating physicians are not entitled to "any specific evidentiary weight, including controlling weight." 20 C.F.R. § 404.1520c(a). An ALJ is required to consider the persuasiveness of medical opinions based on several listed factors, including supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Of these factors, supportability and consistency are the two most important for the ALJ to consider. 20 C.F.R. § 404.1520c(b)(2). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray v. Saul*, 861 Fed. Appx. 102, 105 (7th Cir. 2021) (internal citations omitted) (quoting *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)). In conducting this analysis, the ALJ may not fixate on select portions of a treating physician's notes while disregarding more significant evidence. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (finding that the ALJ "cherry-picked" the treating physician's treatment notes about mood and affect while disregarding his diagnoses.").

The ALJ considered Dr. Dansdill's and Parrett's opinions together[2] and determined that neither were persuasive. R. 24. While finding their limitation of Plaintiff to sedentary work to be consistent with the medical evidence of Plaintiff's rheumatoid arthritis, the ALJ determined that their opinions regarding Plaintiff's additional limitations were unsupported by and inconsistent with her treatment records. R. 24. The ALJ provided five reasons why he found Dr. Dansdill's opinion inconsistent with the treatment records. R. 24. These reasons do not collectively constitute substantial evidence to support his determination.

First, the ALJ found that "treatment records note improvement in the claimant's symptoms under her current medication regimen." R. 24. "[I]mprovement is a relative concept and, by itself, does not convey whether or not a patient has recovered sufficiently to no longer be deemed unable to perform particular work on a sustained basis." *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 960 (11th Cir. 2016). Thus, courts have consistently found that improvement with treatment

---

[2] While the ALJ discussed Dr. Dansdill's and Parrett's opinions together, Plaintiff only challenges the ALJ's interpretation of Dr. Dansdill's opinion and therefore the Court does not discuss Parrett's opinion here except where relevant to the ALJ's analysis of Dr. Dansdill's opinion.

4

is not alone inconsistent with a medical opinion that a claimant is disabled. *Lourdes C. v. Kijakazi*, No. 19-CV-04543, 2022 WL 595310, at *10 (N.D. Ill. Feb. 25, 2022); *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *4 (N.D. Ill. June 29, 2021); *Nancy K. v. Saul*, No. 19 C 3137, 2020 WL 4273976, at *5 (N.D. Ill. July 24, 2020). *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("[O]ne's medical condition could improve drastically, but still be incapable of performing light work. . . [t]he key is not whether one has improved . . . but whether they have improved enough to meet the legal criteria of not being classified as disabled." The ALJ needs to explain how the evidence of improvement is inconsistent with the medical opinion. *See Brett D.*, 2021 WL 2660753, at *3. In *Brett D.*, the Court found that the evidence of temporary improvements in the claimant's symptoms suggested a fluctuation in his symptoms and abilities not "sustained improvement to the point that he could perform full-time unskilled work". *Id.* at *4.

Even as described by the ALJ himself, Plaintiff's medical record is not a steady march of improvement, but a story of fluctuation. R, 21-23. Her struggle with rheumatoid arthritis began when she was 14 years old and in that time she has tried a variety of treatment regimens. R. 21. Her condition went in remission during her final years of high school. *Id.* After high school, she was able to work for several years despite her diagnosis until she determined her symptoms rendered her no longer able to do so. *Id.* In 2018, she began using Kevzara and as the ALJ notes, Plaintiff reported that while on the drug her rheumatoid arthritis symptoms decreased in both frequency and severity. *See* R. 22–23. The most recent treatment notes in the record show that her symptoms continued to fluctuate. On December 4, 2019, Dr. Dansdill noted that though continuing to use Kevzara and finding that it "worked better than anything so f[ar]", Plaintiff continued to report ongoing pain and assessed her then-pain level as a 3 out of 10. R. 1009–10. This report can be contrasted with her September 26, 2018 visit, where Plaintiff described "feeling good" on Kevzara and rated her current level of pain as a 0 out of 10. R. 348. Dr. Dansdill opined that Plaintiff, like the claimant in *Brett D.* and many others who suffer from chronic diseases, has good days and bad days. R. 1024. Parratt, Plaintiff's chiropractor, also specifically stated that during an arthritis flare-up, Plaintiff would be significantly more limited in her ability to work. R. 695–96. While the ALJ did discuss evidence of improvement including progress with Kevzara, he failed to provide substantial evidence connecting these improvements to his determination that Dr. Dansdill's opinion was unpersuasive.

Second, the ALJ found that "[t]he claimant's inflammatory markers are also above normal." R. 24. Plaintiff argues that above normal inflammatory markers do not support the ALJ's discrediting of Dr. Dansdill's opinion, because above normal inflammatory markers indicate the presence of an autoimmune condition and therefore only corroborate Plaintiff's diagnosis of rheumatoid arthritis. [14, at p. 13]. Neither the ALJ in his decision nor the Commissioner in her brief explain why above normal inflammatory markers are inconsistent with the Dr. Dansdill's opinion.[3] "There is always a danger when lawyers and judges attempt to interpret medical reports." *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016). See *Moon v. Colvin*, 763 F.3d 718, 722 (7th

---

[3] The Commissioner argues that the ALJ was referencing Kerry Wright's remark in her July 18, 2018 outpatient summary that Plaintiff "has had improvement in her symptoms and her inflammatory markers as noted above her normal," R. 279, and that in context "her" was a typographical error and should be interpreted as "are". [*See* 19, at p. 10–11]. However, since the ALJ himself stated that the inflammatory markers are above normal, this argument does not address Plaintiff's argument.

Cir. 2014) (finding the ALJ erred in relying on a claimant's "unremarkable" MRI results as evidence discrediting her alleged migraine symptoms, because "[d]octors use MRIs to rule out other possible causes of headache . . . meaning that an unremarkable MRI is completely consistent with a migraine diagnosis"). The Court will not defer to the ALJ's unexplained and unsupported medical analysis when Plaintiff has without rebuttal cited a medical source as stating the opposite.

Third, the ALJ found that Dr. Dansdill's opinion that Plaintiff "has severe manipulative limitations is inconsistent with physical examinations showing normal handgrip and strength." R. 24. While this observation is correct, the ALJ fails to explain why it is relevant. Plaintiff complains of fatigue and pain. Neither of these symptoms which she and Dr. Dansdill cite as causing her reduced capacity for work is inconsistent with displaying "normal handgrip and strength" in an exam room. Dr. Dansdill did not opine that Plaintiff was incapable of grasping or performing fine manipulations, he limited those tasks to 5% and 10% of her time respectively. *See* R. 1023. In *Adaire v. Colvin*, the Seventh Circuit found that the ALJ erred in reasoning that a claimant's ability to "move around 'with ease and a normal gait" discredited his complaints of chronic back pain, because the ALJ failed to "explain why, if the [claimant]'s evidence of pain were truthful, it would imply that he limps." 778 F.3d 685, 688 (7th Cir. 2015). The ALJ made a similar error here. In finding that Dr. Dansdill's observation that Plaintiff demonstrated normal strength in short stints in his office contradicted his opinion that she could not use her hands for the entirety of an eight-hour workday, the ALJ cherrypicked a low salience excerpt to support his conclusion without explaining his reasoning for why it should triumph over the contrary evidence.

Fourth, the ALJ found that Plaintiff "also had a normal strength in all extremities and normal range of motion of the spine." R. 24. Again, the ALJ cites evidence of strength displayed in medical office visits as inconsistent with Plaintiff's allegations of pain and fatigue without providing any further explanation to support this finding. In his December 14, 2019 treatment notes, Dr. Dansdill recorded that Plaintiff showed "[g]ood strength in all extremities", R. 1009, but also noted that Plaintiff's difficulty with prolonged sitting, standing, and typing and her need to "take frequent rests and pace herself more." R. 1010. The ALJ provides no explanation for why a showing of strength in the exam room discredits the opinion of Plaintiff's treating rheumatologist who both noted that strength in the exam room and credited Plaintiff's complaints of fatigue and pain.

Fifth, the ALJ found that Dr. Dansdill's opinion was "also inconsistent with his treatment records showing normal physical examinations and minimal pain complaints." R. 24. Elsewhere in his decision, the ALJ laid out a summary of the treatment record noting that "while [Plaintiff] alleges severe pain and frequent rheumatoid arthritis flare [sic], she typically rated her pain level between a 0 and 4 during her routine visits from December 2018 through 2019" and that in her last 2019 office visit "[s]he rated her pain level a 3, on a pain scale of 1-10." R. 22–23. Plaintiff argues that no evidence in the record shows what the standards on the pain scale meant in context and that individual doctor visits could not be expected to provide a representative sample of Plaintiff's overall pain. The latter arguments is somewhat persuasive for the same reasons discussed above. The ALJ does not explain how Plaintiff's reports of not being in severe pain during her visits to Dr. Dansdill's office are inconsistent with the limitations listed in Dr. Dansdill's opinion. For example, in the treatment notes for the December 14, 2019 visit that the ALJ specifically cites in his opinion, the reported pain level is reasonably read as Plaintiff's reported level of pain for the

6

time of the visit, *see* R. 1009, and pain felt during medical visits would not necessarily be indicative of her pain level during a rheumatoid arthritis flare-up or five hours into an eight-hour workday.

Beyond supportability and consistency, the ALJ is unclear as to what factors, if any, were considered in his analysis. The death of the old treating physician rule did not render the existence of a treating relationship irrelevant to the ALJ's analysis. *See* 20 C.F.R. § 404.1520c(a). The relationship between claimant and doctor; length, purpose, and extent of treatment relationship; and frequency of examinations remain part of the multifactor framework to be considered. 20 C.F.R. § 404.1520c(a). While not required to discuss each factor in his opinion, the ALJ should have considered the nature of the treating relationship between the Plaintiff and Dr. Dansdill a part of that framework. The ALJ noted that Dr. Dansdill had been treating Plaintiff for nearly eight years at the time his opinion was offered. *See* R. 23. Yet, the ALJ's decision invokes no other consideration of Dr. Dansdill's treating relationship. Nor does the ALJ note in connection to his analysis that Dr. Dansdill is a rheumatologist, a specialist in treating conditions like rheumatoid arthritis, though specialization is also a listed factor for consideration. *See* 20 C.F.R. § 404.1520c(a). In providing his rationale for finding Dr. Dansdill's opinion unpersuasive, the ALJ does not seem to consider Dr. Dansdill's long treating relationship with Plaintiff and specialization. Instead, the ALJ seemingly lumps his opinion together with that of Parrett, the chiropractor who saw Plaintiff for only a few months prior to providing his opinion. *See* R. 24.

Instead of crediting Dr. Dansdill's opinion, the ALJ found the opinions of non-treating and non-examining state medical consultants Dr. Aquino and Dr. Panepinto to be persuasive, while also finding "additional postural and manipulative limitations" beyond those included in their opinions. R. 24. An ALJ may rely on the opinions of state-agency medical consultants and credit the opinions of non-treating consultants over those of a treating physician. *Lisa S. v. Saul*, No. 19 C 862, 2020 WL 5297028, at *14 (N.D. Ill. Sept. 4, 2020). However here, the ALJ made a factual error, which while itself minor, undermines his determination that the non-treating state agency medical consultant opinions were more persuasive than that of Plaintiff's treating specialist. As the Commissioner conceded, the ALJ mistakenly stated that upon reconsideration Dr. Aquino affirmed Dr. Panepinto's opinion. *See* R. 24. While Dr. Panepinto opined that Plaintiff could only stand or walk for a total of two hours in an eight-hour workday, Dr. Aquino opined that claimant could stand or walk for a total of six hours in an eight-hour workday. R. 79, 90. Dr. Aquino's opinion differed enough from Dr. Panepinto's opinion that on reconsideration Plaintiff was not limited to sedentary work but found to be capable of performing light work. *See* R. 81, 92. The ALJ's error in conflating these opinions undermines the ALJ's reasoning that the state agency consultant's opinions were "internally consistent and well supported by a reasonable explanation and the available evidence," his stated rationale for finding the state medical consultant's opinions persuasive. R. 24.

The Commissioner argues that since the ALJ relied on the more severe limitations and provided additional rationale for discounting Dr. Dansdill's opinion, his error in stating that Dr. Aquino affirmed Dr. Panepinto's opinion was harmless. The Commissioner is correct that Dr. Panepinto's opinion was more limited than Dr. Aquino's and that the ALJ found that additional limitations were warranted beyond those provided for in Dr. Panepinto's opinion. The ALJ's flawed reading of Dr. Aquino's testimony would not alone constitute reversible error, if the

Commissioner provided an otherwise well-supported rationale for crediting the state agency consultants' opinions over that of Dr. Dansdill. However, the ALJ did not do so here.

Given the flaws in the ALJ's reasoning for discrediting Dr. Dansdill's opinion, the factors supporting Dr. Dansdill's reliability left undeveloped in the ALJ's decision, and the ALJ's error in evaluating the state agency consultant opinions, the Court finds that the ALJ's discrediting of Dr. Dansdill's opinion was not supported by substantial evidence. As the Court finds this error necessitates a remand, the Court has not considered the Plaintiff's other arguments.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [13] is granted and the Commissioner's memorandum in support of motion for summary judgment [19] is denied. The Commissioner's decision is remanded for further consideration consistent with this opinion.

Date: 03/29/2023         ENTER:

*Margaret J. Schneider*
United States Magistrate Judge